UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH ANN HANCOCK,

       Plaintiff,

Case No. 1:16-cv-1105

v.

HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
                            /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-four years of age on the date of the ALJ's decision. (PageID.35, 84.) She has a high school education, and was previously employed as a custodian. (PageID.56, 79.) Plaintiff applied for benefits on February 12, 2014, alleging disability beginning May 31, 2013, due to bilateral wrist injuries, an injury to her left shoulder, a torn rotator cuff, and lower back to right leg pain. (PageID.84. 150–156.) These applications were denied on June 26, 2014, and Plaintiff

subsequently requested a hearing before an ALJ. (PageID.100–105.) On July 8, 2015, Plaintiff appeared with her counsel before ALJ Thomas L. Walters for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.52–82.) On July 22, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.35–51.) On June 14, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.27–32.) Thereafter, Plaintiff initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Walters determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.40.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of left wrist epicondylitis, left shoulder tendonitis, degenerative disc disease, and carpal tunnel syndrome. (PageID.40.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.42.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CF 404.1567(b) except she cannot reach or lift overhead; can occasionally bend, turn, crouch, stoop, climb, crawl, and kneel; can occasionally grip and grasp; can frequently finger and handle; and must avoid heights or moving machinery

(PageID.42.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.46–47.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: interviewer (100,000 national positions), usher (169,000 national positions), and driver (155,000 national positions). (PageID.79–81.) Based

4

on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.48.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from May 31, 2013, the alleged disability onset date, through July 22, 2015, the date of decision. (PageID.48.)

## DISCUSSION

### 1. Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96–8P, 1996 WL 374184 at *1 (S.S.A., July 2, 1996) (stating that a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that her RFC is not supported by substantial evidence because the ALJ applied the wrong standard of disability, failed to properly consider her obesity on her ability to work, and further failed to consider her medication side effects. None of these arguments merit relief.

#### A. Disability Standard

Plaintiff claims that the ALJ imposed too high a bar on Plaintiff's claims when he said that portions of the record were not consistent with "an individual who is completely unable to engage in any substantial gainful activity." (PageID.45–46.) Plaintiff misconstrues the ALJ's decision.

Plaintiff's argument here is nebulous. It is not clear whether Plaintiff claims the ALJ applied the wrong standard of disability or if she argues the ALJ should have adopted an RFC for

5

sedentary, rather than light, work and found her disabled under the medical-vocational guidelines. If Plaintiff is claiming the latter, as the Commissioner appears to believe, the argument is entirely undeveloped. Indeed, Plaintiff appears to say the argument is "irrelevant." (PageID.416.) Accordingly, the Court will review the claim in the argument's headline of whether the ALJ applied the correct standard of disability.

In both instances where the ALJ used the complained of language, the ALJ was obviously commenting on Plaintiff's own assertion that she was completely unable to work. In doing so, the ALJ was not determining whether Plaintiff was disabled under the Social Security Act. To the contrary, the ALJ's decision clearly followed the well-worn five step sequential process for evaluating disability claims. After determining that Plaintiff did not meet or equal any listed impairment, the ALJ moved on to the fourth step and determined Plaintiff's RFC. (PageID.42.) Then, at step five, the ALJ relied on the VE's testimony which provided a significant number of jobs in response to a hypothetical incorporating the limitations reflected in the RFC. (PageID.47.) "The ALJ's nondisability finding was therefore properly based on an RFC determination rather than a finding that [Plaintiff] merely was not ['completely unable to engage in any substantial gainful activity.']" *Smith v. Colvin*, No. 15-CV-02563-RBJ, 2016 WL 7029835, at *6 (D. Colo. Dec. 2, 2016). Therefore, the Court concludes the ALJ applied the correct disability standard.

    B.    *Obesity.*

Next, Plaintiff contends the ALJ failed to consider the effects of her obesity on her ability to perform work. (PageID.416–418.) Plaintiff correctly notes that the effect of obesity on a claimant's ability to work must be specifically considered. *See* SSR 02–1P, 2002 WL 34686281

(Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) ("an ALJ must 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation'") (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

While the ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a claimant's obesity, the ALJ must do more than merely "mention the fact of obesity in passing":

> Obesity . . . must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'

*Shilo*, 600 F. App'x at 959 (quoting SSR 02–1p, 2002 WL 34686281 at *1-2). The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity 'commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' For example, 'someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.' The ALJ also must specifically take into account 'the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment,' and consider how 'fatigue may affect the individual's physical and mental ability to sustain work activity'-especially in 'cases involving sleep apnea.'

*Id.* (quoting SSR 02–1P, 2002 WL 34686281 at *3–6). But SSR 02–1p cautions that the Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The Commissioner] will

7

evaluate each case based on the information in the case record." SSR 02–1p, 2002 WL 3468281 at *6. In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent medical opinions and evidence to show specifically how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work. Plaintiff has not done so here.

In support of her argument Plaintiff points to records reflecting a medical diagnosis for certain levels of obesity. (PageID.416.) But it is well understood that "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition"). Plaintiff, therefore, has not shown that her obesity imposes on her certain limitations in excess of those accounted for in the ALJ's RFC determination.

C. Plaintiff's Side Effects.

Plaintiff next complains that the ALJ's RFC failed to fully account for the side effects she experienced from her prescribed medications. The authority that Plaintiff relies on, SSR 96-7p, states that medication side effects are one of several factors an ALJ must take into consideration when evaluating the credibility of a claimant's allegations. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996.) Here, the ALJ explicitly acknowledged Plaintiff's reports of side effects, but nonetheless found that Plaintiff's allegations were not fully credible. (PageID.43.) Thus it appears the ALJ properly followed SSR 96-7p.

It appears that in this claim of error, however, Plaintiff raises an argument separate from her credibility and contends that the ALJ should have incorporated limitations for her side effects into the RFC. Allegations of side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (concluding that where the claimant testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contained no such reported side effects to her physicians); *Farhat v. Sec'y of Health & Human Servs.*, No. 91–1925, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence"). Plaintiff's brief lacks any reference to a medical record where Plaintiff complained of any side effects. (PageID.418–419.) Nonetheless, in the Court's review of the record, the undersigned observed a September 7, 2012, treatment note indicating that Plaintiff experienced illness, dry mouth, and a feeling that she was going to pass out when she took Tramadol. (PageID.239.) Such does not merit relief, however, because by Plaintiff's own account she is no longer taking that medication. (PageID.198.)

At other visits, Plaintiff was cautioned that another medication, Flexeril, could cause drowsiness. (PageID.235.) But at the hearing, Plaintiff stated she was prescribed Flexeril because "it was intended to help me sleep and relax at night so I could get quality sleep." (PageID.69.) Thus Plaintiff's drowsiness does not appear to be a side effect of the medication and instead appears to be its intended effect. The Court finds no error here.

For all the above reasons, Plaintiff's first claim of error is denied.

## 2. Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far greater than as ultimately recognized by the ALJ. In his decision, the ALJ summarized Plaintiff's allegations as follows:

> The claimant alleges that she is completely unable to perform any work due to pain and functional limitations caused by her impairments. She reported that she cannot sit or stand for very long, use her arms very long, and is in pain most of the time. She is no longer able to take care of her horses, do yard work, play with her grandkids, or do anything she used to do. She described difficulty sleeping and slowness/difficulty performing some of her personal care. Most days she is fighting depression, but she forces herself to get on the computer or phone to socialize and then she will go to visit someone one or two days a month. Overall, she reported that her impairments affect lifting, squatting, bending, standing, walking, reaching, walking, [sic] sitting, kneeling, hearing, stair-climbing, and using her hands. She indicated that anything with her hands is limited by pain, and she can only walk 15 to 20 minutes before she starts hurting. [S]he could only lift five to ten pounds, walk about one block, and sit for about 10 to 20 minutes. She indicated that her medications cause adverse side effects of sleepiness, headaches, dry mouth, nausea, dizziness, lightheadedness, and difficulty laying down (Hearing Transcript, Ex. 3E).

(PageID.43.) The ALJ concluded that these allegations were "not entirely credible." (PageID.43.) Plaintiff contends that the ALJ's decision in this respect is unsupported by substantial evidence. The Court disagrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters*

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human*

*Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

> The ALJ discussed Plaintiff's allegations as follows:
>
> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record (SSR 96-7p). Based on a consideration of all the evidence in the case record, the undersigned finds that the claimant's statements are not fully consistent with the medical signs and laboratory findings and other information provided by medical sources, including the longitudinal medical record, to a degree that supports a finding of disability. While the undersigned finds the claimant's statements credible that her abilities are affected by reported symptoms, they are found only partially credible as to the extent of the functional limitations due to the symptoms. In determining the credibility of the claimant's statements in this case, the undersigned considered the entire case record as required under 20 CFR 404.1529(c)(2)-3) and SSR 96-7p.

(PageID.45.) The ALJ then listed several activities that he found to be inconsistent with Plaintiff's complaints. Earlier, the ALJ referenced medical records that he also found were not consistent with Plaintiff's allegations. (PageID.45.) The ALJ's decision is well supported.

In her function report, Plaintiff stated she was unable to sit or stand "for any length of time." Furthermore, she stated she could not use her arms "for any length of time." (PageID.191.) The ALJ found these extreme assertions to be inconsistent with, among other things, records where Plaintiff had no swelling and full muscular strength. (PageID.232, 238.) An examination of Plaintiff's right wrist on August 27, 2013, revealed a positive median nerve compression test and positive Tinel's sign on that nerve, but a negative ulnar nerve compression test and negative Tinel's sign on the ulnar nerve. (PageID.294.) The doctor examined X-rays taken of her wrist and noted that "[e]verything looks good." (PageID.294.) Dr. Frederick Vincent performed an examination the

12

following month and found Plaintiff's muscle bulk and strength were relatively normal in her hands and arms. There was no definite median or ulnar nerve Tinel's sign at the right wrist or elbow. (PageID.307.) While the doctor recommended Plaintiff wear a wrist split, additional surgery did not appear to be warranted. (PageID.310.) Furthermore, the ALJ gave "some weight" to an evaluation on June 14, 2014, by Dr. Thuy Nguyen. The doctor found Plaintiff had a normal gait and station. (PageID.343.) She also had no issues with range of motion, strength, or sensation, and furthermore Plaintiff demonstrated a negative Tinel's and Phalen's sign. (PageID.345.) Finally, mental status examinations consistently showed Plaintiff was alert and oriented, with an appropriate affect and demeanor, with intact memory and good insight and judgment. (PageID.235, 240.) Thus overwhelming evidence exists to support the ALJ's determination that the medical record did not fully support Plaintiff's assertions.

Plaintiff's argument largely ignores the medical evidence referenced by the ALJ, and instead argues the ALJ's description of her daily activities exaggerates the extent and frequency of those activities. She further argues the ALJ relied on some records predating her alleged onset date to find her allegations were not credible. It was appropriate for the ALJ to take Plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It appears the ALJ did err, however, when he referenced Plaintiff's horse riding because the record the ALJ references does predate Plaintiff's alleged onset date. (PageID.242.) But any error here was harmless. The ALJ referenced a litany of other activities, such as gardening, shopping, preparing meals, and doing chores, that are all inconsistent with Plaintiff's complaints of extreme limitation in the use of her extremities. Plaintiff's argument that the ALJ's description

13

exaggerated her activities misses the mark. Even under Plaintiff's characterization, these activities are inconsistent with her allegation that she was unable to use her upper extremities for any length of time.

Accordingly, this claim of error should be denied.

### 3. Physician's Assistant Opinion

In support of her application for disability benefits, Plaintiff submitted several statements from Ms. Holly Barone, a certified physician's assistant. The first, dated September 7, 2012, contains Ms. Barone's statement that Plaintiff's right shoulder rotator cuff tear and left shoulder tendonitis limited Plaintiff to performing no overhead lifting, no lifting at all over fifteen pounds, and no frequent arm use. (PageID.286.) Later that month, on September 20, 2012, Ms. Barone stated that Plaintiff could continuously sit, stand, or walk, for eight hours. (PageID.288.) She could never reach above shoulder level, and only occasionally lift and carry up to ten pound weights. She could never push or pull and she could only occasionally perform fine finger movements. (PageID.288.) On November 5, 2012, Ms. Barone wrote that Plaintiff still had the limitations identified in the September 7, 2012, note. (PageID.285.) But only a week later, Ms. Barone added that Plaintiff could not sit, stand, or walk, at all over the course of an eight hour workday. (PageID.283.) She could also only lift a maximum of ten pound weights, and never reach over her shoulders. (PageID.283.) Finally, on January 22, 2013, the doctor provided the same restrictions first identified in the September 7, 2012, note. (PageID.281.) The ALJ assigned the opinions only little weight. (PageID.46.) Plaintiff claims the ALJ erred in doing so. In her reply brief, she further argues the ALJ erred in assigning more weight to a non-examining agency consultant who did not review the entire record.

A. *Ms. Barone, a Physician's Assistant, Qualifies Only as an "Other Source."*

Under the regulations applicable at the time of the ALJ's decision, physician's assistants are not "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a). There is no "treating physician's assistant rule" and the opinions of a physician's assistant are not entitled to any particular weight. *See Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). SSR 06–3p clarified how the Social Security Administration "consider[d] opinions from sources who are not 'acceptable medical sources.'" SSR 06–3p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006).[2] SSR 06–3p begins by emphasizing the critical distinctions between opinions offered by "acceptable medical sources" and opinions supplied by "other sources." Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *Id.* at *1. The opinions of a physician's assistant fall within the category of information provided by "other sources." *Id.* at *2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404.1512, 1527, 416.912, 927). That said, the ruling recognizes that:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation

---

[2] The administration rescinded this ruling on March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 17, 2017). The administration noted the ruling was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.* Those new rules, however, apply only to claims filed on or after March 17, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (Jan 18, 2017). Plaintiff's claim was filed well before that date, thus SSR 06-03 properly applies to Plaintiff's claim.

15

> functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Accordingly, the ruling further provides that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. It further states that the factors for considering acceptable source opinions "can" be applied to these opinions. *Id.* at *4.

The Court concludes SSR 06-03p's standard was easily met here. The ALJ thoroughly discussed the opinion and provided several reasons for assigning it only little weight. In addition to noting Ms. Barone's status as an other source, the ALJ noted that the opinions offered by Ms. Barone were inconsistent. Plaintiff does not meaningfully challenge this latter consideration. As the ALJ found, at times the assistant noted Plaintiff could not sit, stand, or walk at all during the workday, and at other times provided no limitation for these postural activities whatsoever. Thus the ALJ gave Ms. Barone's opinion the "specific consideration" that the Sixth Circuit requires. *See Cruse*, 502 F.3d at 541.

> B. *The ALJ Did Not Err in Assigning Greater Weight to the Opinion of the Agency Consultant, the Only Acceptable Source Opinion in the Record.*

In her reply brief, Plaintiff contends the ALJ erred in assigning significant weight to the opinion of the stage agency consultant, Dr. Quan Nguyen, M.D., who found that Plaintiff was capable of performing light work. (PageID.90-91.) While admitting that agency consultants are

highly qualified, Plaintiff alleges the ALJ's decision violates SSR 96-6p because the consultant did not review the entire record. (PageID.444.) The section referenced by Plaintiff states:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). The problem for Plaintiff is that she has not identified a medical opinion from an acceptable treating or examining source that was given less weight than the opinion of the agency consultant. She references only statements from therapists and physician assistants who only qualify under the regulations as other sources. Plaintiff provides no authority interpreting the ruling in the fashion she would prefer, and the Court is not persuaded Plaintiff's reading is the correct one. The regulations in effect at the time of the ALJ's decision clearly distinguished between acceptable and other source opinions. In fact, under SSR 06-03p, only an acceptable source could provide a medical opinion. *See* SSR 06-03p, 2006 WL 2329939, at *2. For that reason, the ALJ did not err in assigning greater weight to the consultant's opinions than the other source opinions.

In *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016), the Sixth Circuit noted that "before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give some indication that he at least considered that the source did not review the entire record. In other words, the record must give some

indication that the ALJ subjected such an opinion to scrutiny." *Id.* (internal citations and quotation marks omitted). It is plain that the ALJ subjected the consultant's opinion to scrutiny here because the ALJ ultimately assigned Plaintiff greater restrictions – for example, no reaching or lifting overhead – than were assigned by the consultant. (PageID.90–91.) Accordingly, the ALJ did not err in assigning significant weight to Dr. Nguyen's opinion.

Finally, Plaintiff makes brief references to a physical therapist and asserts that the ALJ failed to properly address that opinion as well. (PageID.447.) Plaintiff's argument regarding the therapist is cryptic at best, and the Court finds it to have been waived. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived.").

For all the above reasons, this claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated:     July 3, 2017                     /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE